The next case on the call of the docket is agenda number six, case number one, three, two, zero, one, five, right? Versus yet. Checko counsel for the appellant. You may proceed with your argument. Good morning, Mr Chief Justice. Good morning, counsel. May it please the court. This court should vacate or reverse the circuit court's judgment on either of two independent grounds. First, Bright's challenge to the temporary suspension of his FOIA card is moot because his FOIA card was reinstated in May 2023, and he did not make a clear showing that any mootness exception applies. Second, the temporary suspension of Mr Bright's FOIA card while he faced felony charges did not violate the Second Amendment. So turning first to the issue of mootness, Bright conceded that this case is moot because his FOIA card was returned to him. And although the circuit court reached the merits of this claim under the public interest exception to mootness, Bright did not make a clear showing, the clear showing necessary for any of the three criteria for that exception. So the first criteria, Mr Bright's as applied Second Amendment challenge to the temporary suspension of his FOIA card did not raise an issue of public concern. To be an issue of a public nature, an issue must have a significant effect on the public as a whole. But whether Mr Bright's FOIA card was properly suspended for two months is not that type of issue. And despite Mr Bright's subsequent efforts to broaden the scope of his claim, his complaint made clear that his challenge was as applied because it focused on his right to bear arms and sought only injunctive relief as to his FOIA card. So that- Counsel, the circuit court, the relief granted, was it indicative of this being an as applied challenge or a facial challenge? The circuit court construed it as a facial challenge, but that was incorrect, Your Honor, because, again, Mr Bright's claim and his complaint focused solely on relief as to his FOIA card and it alleged a violation of his rights. It didn't seek a declaration that the statute was unconstitutional on its face, nor did it seek the broad injunctive relief that the circuit court ultimately entered. And as further evidence that this is an as applied challenge, Mr Bright repeatedly used the phrase as applied to characterize his claim at summary judgment. In an argument on the mootness issue, Bright conceded that it would probably be constitutional to suspend a FOIA card of someone who was charged with a violent crime so long as there was a probable cause determination. That's the exact same type of concession that this court considered in Davis in construing that claim as an as applied challenge. This court recognized that the plaintiff in Davis had conceded there were constitutional applications of Section 8N of the FOIA Act, same statute of issue here. And we have a similar concession here, so this court should construe it as an as applied challenge, despite the circuit court's conclusion to the contrary. However, even if the circuit court was correct in construing this as a facial challenge, it still was not correct in applying the public interest exception. First of all, the facial constitutional challenge, excuse me, in and of itself, does not raise an issue of a public nature, and that's made clear by this court's Donald B decision. Here, a facial challenge would apply only to individuals who held a FOIA card, who were charged with, but not yet convicted or acquitted of a felony. That's a narrow subset of the population as a whole, and Mr. Bright made no effort to estimate the number of people in that group at summary judgment. So, even if he brought a facial challenge, it still did not raise an issue of a public nature. And even if that issue was of a public nature, moving to the second criteria of the public interest exception, there's no need for this court to issue an advisory opinion to provide lower courts with guidance on the constitutionality of Section 8N. First of all, as this court recently emphasized in Seymour, that criterion is generally not met in cases of first impression. And here, the parties agree, this is an issue of first impression in Illinois courts. And although this court has occasionally reached issues of first impression under the public interest exception, it's generally done so in one of two areas. First, election law cases, and second, cases that involve some sort of potential infringement on an individual's physical liberty. Whether that's detention of a juvenile, administration of psychotropic medication involuntarily, or administration of medical care to a juvenile. We don't have those circumstances here. This is not one of those categories of cases. And there also is no need for guidance here because, as we explained in our brief, federal courts of appeals have issued several decisions that have uniformly upheld a similar federal law that prohibits the acquisition of firearms while an individual is under felony indictment. So those cases provide clear guidance to lower courts in Illinois, specifically as of historical tradition, allowing for the complete but temporary disarmament of individuals facing felony charges. Counsel, what about the US Supreme Court case that's pending right now, Hamani? Would that be constructive? I think it could be constructive as to the general standards applicable to Second Amendment claims. However, Hamani really deals with a distinct issue in that that deals with drug users. Rights to bear arms. And so the historical tradition at issue there is generally laws involving drunkards or similar laws like that. It doesn't involve the situation we have here where we have a felony charge. And Hamani won't affect Kuros, Gore, or any of the other federal courts of appeals decisions that have analyzed the historical tradition of pretrial detention laws and said that those support the complete but temporary disarmament of individuals facing felony charges. Also, as to the third criterion, briefly, on the public interest exception, again, we have an as-applied challenge here. So it's unlikely that this same situation is going to recur to Mr. Bright. Any assertion that it would would be speculative. And for the same reason, the capable of repetition yet evading review exception is unavailable to him. He's speculating that I might be charged with a felony that might lead to the suspension of my FOIA card in the future. That's not the clear showing necessary to apply the public interest exception or any mootness exception. So this court should reverse the circuit court's order applying the public interest exception and vacate the judgment as moot. But if it does apply a mootness exception, it should reverse the judgment holding that Section 8N is faithfully unconstitutional. Initially, I want to emphasize that if the court does construe this as a facial challenge, again, we have concessions by Mr. Bright that there are constitutional applications of Section 8N to individuals facing certain violent felonies. And that ends his facial constitutional claim at the outset. Because to bring a facial challenge, a party has to show that statute's unconstitutional in all its applications. But setting that aside, under the Bruin standard, this claim would be analyzed at two steps. So at the first step, Mr. Bright would have to show that the plain text of the Second Amendment applies to his conduct. And if it does, then the burden was shipped to the state to point to relevant historical analogs. For the reasons set forth in our brief, the Second Amendment's plain text did not apply to Mr. Bright's charges because he could be considered as not law-abiding. But even if he were, there are three categories of relevant historical analogs that support Section 8N's temporary suspension of firearm rights. First, the pretrial detention laws I mentioned in response to Justice Silverstreet's question, reflected in cases like Gore, Quiroz, Perez-Garcia. Those reflect a history of detaining and necessarily disarming individuals who faced serious charges at the founding. Second, there's a historical tradition of categorical disarmament laws that apply to individuals who the founders deemed to pose a risk of firearm misuse. And that's reflected in cases like Duarte and Jackson. And importantly, those categorical prohibitions applied regardless of there being any sort of individualized determination as to the members of those groups being actually dangerous or potentially violent. And although many of those laws are abhorrent and they would be unconstitutional today, certainly under the 14th Amendment and other constitutional amendments, they still inform the historical analysis that Bruin instructs courts to undertake. And the third category are the surety laws that allow for restriction of firearm access to those reasonably accused of intending to breach the peace. And those could be entered on a finding of probable suspicion that an offense was intended, similar to the probable cause determination that accompanies felony charges today. So Section 8N is relevantly similar to all those laws in both how and why it burdens the Second Amendment right. Section 8N, like the pretrial detention laws and the surety laws, is a temporary suspension of firearm rights. And as the pretrial detention laws show, complete but temporary deprivations of a Second Amendment right were permissible at the founding. And like the categorical disarmament laws, Section 8N reflects a presumption that individuals who face felony charges pose a heightened risk of firearm misuse without any sort of individualized risk assessment, as the circuit court suggested was necessary. And as for the why question that Bruin instructs courts to ask, each of those laws in Section 8N serve the same function, which is protecting public safety and guarding against firearm misuse. So unless this court has any further questions, for those reasons and the reasons stated, I'm afraid we have to reverse the circuit court's judgment. Thank you, counsel. Mr. Magg. Thank you, Mr. Chief Justice, members of the court, and the court and counsel. This court should affirm Judge Walker's decision granting summary judgment holding that Section 8N of the FOIA Card Act as applied to the construction of 18 U.S.C. 922 N is unconstitutional. It's important to note there is no actual Illinois statute and no actual federal statute that directly disarms persons that are merely charged as opposed to convicted of a felony offense. It is through the interplay of two statutes under similar but different regulatory regimes that results in this somewhat unique end result. Counsel, let's step back. Do you agree with counsel that this case is moot? Applying the language found in Justice Overstreet's decision when he was on the Fifth District in Kaczynski, technically it is moot, but there are exceptions to the mootness doctrine that apply that allow this case to be moot. Well, does it come within the public interest exception? So how? One, it's a matter of public interest. Constitutional rights are a matter of public interest. This is a state statute that is being enforced by the Illinois State Police that regulates a fundamental constitutional right. This is a matter that reoccurs routinely. This is actually the second time this issue has been in this court in the last couple of years, the first time the court said that Mr. Davis, in the prior case, didn't have standing because his FOIA card was restored before he filed suit. But this circumstance happens routinely. Is this an as-applied challenge? If you want to get technical, and I think there's a good colloquy in the record from Mr. Kincaid, the trial counsel, on yes, it is technically an as-applied challenge. It is a state statute as applied through the construction of a federal statute, but that results in the same end result all the time, which means as a practical matter, it should be treated the same as a facial challenge, even though there are circumstances where both the federal statute and the state statute, independent of each other, may well be constitutional. And we're not challenging the federal statute, just the state statute, as it is the state statute that results in. But counsel, I mean, the heart of an as-applied claim is that as it relates to this specific individual and the unique facts associated with their circumstances. So I don't understand. It's real simple. Mr. Bright's unique facts, the nature of the charge other than being a felony, are irrelevant. It is the fact that it is a felony, that Mr. Bright had a FOIA card, and that he was charged, are really the salient facts. The section 8N requires that a FOIA card be revoked or denied if a holder or an applicant... Counsel, what is the relief that the trial court rendered? What was the relief? In joining the state from revoking FOIA cards in the future for persons merely charged but not convicted of a crime under section 8N of the FOIA card act. And so that relief spoke to anybody who is simply charged with a felony versus specifically just your client. That is accurate. Is that consistent with an as-applied challenge? In this particular case, yes. Because how it is as-applied is through the imposition of the federal statute being construed by the state statute. But doesn't as-applied mean as-applied to this person? As-applied to this person or a class of persons or a category of persons, or as-applied by persons affected by 18 U.S.C. 922N? So yes, it's as-applied, but it's not some narrow as-applied, for instance, to persons charged with protesting on Thursday without a $20 bill in their pocket. It's all persons. It's just the nature of how the legislature drafted the statute, and it is a very broad statute. And when incorporated with the federal statute, you end up with the same end result every time, as though the legislature simply wrote a statute that said, upon being charged with a felony offense, a FOIA card is required to be revoked or suspended. Mr. Magg, you say that the facts don't matter here, but to pages 9 and 10 of your brief, you go on about the specific facts about this case, pointing out that your client is a peaceable person. He made a mistake traveling to Chicago. He had an unloaded firearm. It was enclosed in a case, secured in a trunk, in a car in which he was a passenger. He was stopped for a minor traffic violation. And you go on and explain all these facts. That would seem to undermine your position that this is not a fact-specific constitutional challenge. That's more background information than analysis, although it does relate to some of the argument made by counsel. I mean, the salient issue... Well, but your argument seems to be that not only is he a nonviolent person, he's a particularly nonviolent person. You, in fact, invoked Martha Stewart at some point in your brief. Yes, I mean, my client is a nonviolent person. He is a genuinely innocent man who was genuinely falsely arrested and genuinely violated of his constitutional rights. So there's another principle in the law that courts should reach the constitutionality of a statute only in the last resort. Understood. And that we also follow the rule of party representation. Yes. You're the challenge. Here, the court, seemingly in contravention of the rule of party representation, found the statute to be facially unconstitutional. That would seem to be an error, wouldn't it? I agree that Section 8N, they both have N's in them, so if I cross, I apologize. But Section 8N of the Void Card Act can be constitutionally applied in certain circumstances. For instance, again, the statute itself says that when it's a violation of state or federal law to acquire or possess firearms, a void card is required to be revoked or denied. I do not disagree that a person found to be mentally insane, dangerously so, as prohibited by both federal and state law, can be prohibited a void card under Section 8N. But that's not as far as it goes. How we're challenging it as it's being applied through 18 U.S.C. 922N, which is a person merely charged with a crime or charged with a felony. So your argument really is that the of the defendant's dangerousness. As applied through 922N, I agree with that, but there are other statutes that can be applied through Section 8N that do allow for individualized assessment, such as the mental health determinations, or clear and present danger, or those type of cases. It is the breadth of Section 8N that is really the undoing as applied here. And I would love to be able to look at you and say with a straight face that I think that Section 8N is unconstitutional on its face, but if the Congress were to repeal 18 U.S.C. 922N, then this challenge would go away, the state statute would remain fully in effect, but have no effect on persons like my client in this case. I hope that answers your question. Addressing the second portion of this matter, which is of course the Second Amendment matters, this is governed by the Bruin case. Justice Overstreet made a question about the Harami case, which was argued sometime in the last two weeks, and I did note that this Court did hear oral arguments on another Second Amendment case earlier this month that I did have the pleasure of watching the oral argument on. And I think the Harami case, I think, does have a strong bearing on the outcome of this case, and I think that the Harami case will provide instruction on this case. So I think it would make sense to probably wait a decision of Harami before ruling on this case one way or the other. But in the meantime, the present law is that under Bruin there are two steps, a two-step analysis. And to say that Mr. Bright is not one of the people under the Second Amendment, it completely changes the definition of the word the people in the Second Amendment as to the multiple other places in the Constitution where the term is used. As we know from U.S. Supreme Court, you try to use the same terms as from one part of the Constitution consistently. Now there may be an argument for under the second section of the Bruin analysis, but as far as the first prong of Bruin, Mr. Bright is one of the people who is simply seeking to that is plainly protected under the plain text of the Second Amendment. So we do get past first prong. Bruin, which takes us to the second prong. Is there a historical analog, not a twin, an analog, as noted in the Rahimi case of the Supreme Court? The law is admittedly not stuck in amber, as I believe the Supreme Court of the U.S. has noted. And the answer is, prior to 1968, there is no, at least no express prohibition on persons merely charged with a crime not being able to possess firearms. And that was the, in 1934, was the first federal prohibition on violent felons actually not being able to possess firearms under federal law. If you go back to the time of the Revolution, yes, there was a lot of pretrial incarceration, but those were not firearm control laws. If you go back to the time of the Revolution, yes, there were persons that were prohibited from having arms. But again, there is no historical analog to simply saying, I accuse you of a crime, therefore you cannot keep and bear arms. So on the laws on the books at the time of the founding that provided for detention on charges for non-violent offenses, the point has been made that if you can detain somebody inherently, you can disarm them. It's not as though the defendant is turned over to the jailer, but the jailer says you can keep your firearm while you're in jail, right? So your point is taken that generally speaking, persons in jail, which at the time of the Revolution was a storage place really until they determined what the punishment would be. Their liberty interest is taken away. I'm sorry? Your liberty interest is taken away. Your liberty interest is absolutely taken away, but as Judge Walker noted in this case, that's probably more of an ipso facto thing. The jailer isn't going to let you bring your shotgun to go sit in a jail cell, not because he's worried about you breaking up, maybe his baby is not, but it's simply not going to happen. Of course at the time, they didn't feed you in jail for the most part either. That was up to the family. But the fact that you can't, well again, that is not a firearms control law. That is more of a matter of pretrial court procedure. And today we allow people out on jail. On prior to the Safety Act, a bond with the Safety Act. There's actually a condition that with an appropriate hearing, not challenged here, that the court can say you're being deprived of the use of firearms, possession of firearms while you're out on bond. Again, that's following a Safety Act hearing. We're not challenging that here. What we're challenging is the fact that they are deprived of the use of arms simply because ipso facto, they are charged with a felony, any felony, no matter what the felony is, no matter what the evidence is, it's a total ban based on mere accusation. And there is no, other than the fact that yes, you could lock somebody up and the king did lock people up. That was one of the crimes of the, listed in the Bill of Rights, potentially indefinitely. That's why we have a speedy trial clause of our Constitution. But again, that's not a firearm control law. That's more of a criminal procedure system. Some of this is the court, or strength, the statute is unconstitutional as applied under Bruin. My client's seeking to do something he's entitled to under the plain language of the Constitution. He's been convicted of nothing. His FOIA card was revoked, not based on any finding of dangerousness or the like, but merely ipso facto because he was charged. Certainly that's not to say that upon appropriate finding of dangerousness or of dangerousness that a person cannot be disarmed pre-trial. Merely the fact that this statute, as it is being applied for 18 U.S.C. 922N, is in fact unconstitutional. I'm happy to answer any other questions the court may have. Thank you. Thank you. Counsel, any rebuttal? Just two points, Your Honors. First, on the Kaczynski decision, that involved a facial challenge, and that was made clear by a subsequent decision in the same case more recently called Kaczynski 2 in our brief, where once plaintiff had dropped his facial challenge on remand from Kaczynski 1, the court said the public interest exception doesn't apply because now all we have is a facial challenge. It applies to one individual, not the public as a whole. Furthermore, Kaczynski was decided in 2017, Kaczynski 1, I should say, and that was before Bruin, before Rahimi, and before any of the Court of Appeals decisions we're relying on here. So to whatever extent the Fifth District may have held that there was a need for guidance at the time, at 2017, there's much more guidance as to the meaning of the Second Amendment and the analysis here today. So I don't think Kaczynski is applicable. Second point, on the as-applied facial distinction here, counsel referred to a claim that lumped a whole category of persons together. That's a facial challenge. It's not an as-applied challenge as this Court has defined it most recently in Piazza Armory, where it said an as-applied challenge is as-applied to the plaintiff. And that's exactly what Mr. Bright brought here in his complaint. He wanted injunctive relief as to him and his FOIA card, and he received his FOIA card back. Also, I want to emphasize that the public interest exception doesn't rise and fall solely on the issue of whether this is an as-applied or facial challenge. Mr. Bright also had to show that there was a need for guidance from this Court to issue an advisory opinion, and we really didn't hear anything from counsel today on why an advisory opinion is necessary, given the Court of Appeals decisions we've cited. And I also didn't hear any contention with the concession at pages R of 75 and 76 of the Report of Proceedings that there are constitutional applications to individuals charged with felonies of this statute, and that would defeat any facial challenge. So one way or the other, Mr. Bright faces a catch-22 here. He's either got an as-applied challenge that doesn't satisfy the public interest exception, or it's a facial challenge, and he's conceded there are constitutional applications of this law. So in either event, this Court should reverse the Circuit Court's judgment. Thank you. Thank you, counsel. Case number 132015, Bright v. Yachinko, is taken under advisement as agenda number six. The Court thanks the attorneys for their arguments.